**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Case No. 24-CR-323 (CRC)** |
| **JOSE BIAOU,** | |
| **Defendant.** | |

**DEFENDANT'S OBJECTION AND MOTION FOR A RULING ON HIS PENDING RULE 29(a) MOTION FOR JUDGMENT OF ACQUITTAL**
(Fed. R. Crim. P. 29(b); Fed. R. Crim. P. 51(b))

Defendant Jose Biaou, pro se, respectfully objects to the Court's statements that he failed to renew his motion for a judgment of acquittal, and moves the Court to decide that motion, which remains pending, before any judgment is entered. He further requests a schedule for written submissions and oral argument on the motion. This motion is submitted subject to, and without waiver of, the defendant's pending appeal and his objections to the Court's prior rulings.

## BACKGROUND

At the close of the government's case-in-chief, defense counsel moved orally for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a). The Court reserved decision on the motion under Rule 29(b) and submitted the case to the jury, which returned its verdict on February 17, 2026. The defendant is not aware of any subsequent ruling on the motion. At the October 29, 2026 status conference, standby counsel requested the Court's assistance in obtaining the complete trial transcript, including the portions reflecting the motion and the Court's reservation of decision; the defendant will supplement this motion with them upon receipt.

The Court has since stated that the defendant "did not renew his Rule 29 motion for a judgment of acquittal following the trial," ECF No. 146 at 1, and that he "fail[ed] to renew his motion for a judgment of acquittal," ECF No. 157 at 1; see id. at 2.

## ARGUMENT

### I. The Reserved Motion Remains Pending, and the Court Must Decide It.

Rule 29(b) provides that "[t]he court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). The Rule's command is mandatory: a reserved motion "must" be decided, and on the record as it stood when decision was reserved. United States v. Truman, 688 F.3d 129, 139 (2d Cir. 2012). That remains so "even if [the] defendant has put on evidence in his or her own defense." United States v. Wagner, 382 F.3d 598, 611 n.2 (6th Cir. 2004).

A motion that has been reserved and not decided does not require renewal. Renewal under Rule 29(c) presupposes a motion that has been decided. Where, as here, the Court reserved decision under Rule 29(b), the motion remains before the Court until it is decided. The defendant therefore objects to the statements in ECF No. 146 at 1 and ECF No. 157 at 1–2 that he failed to renew it, and respectfully requests that the Court decide the motion before entering any judgment.

## II. The Evidence Was Insufficient to Prove That Any Charged Wire Crossed State Lines.

### A. The standard.

A judgment of acquittal must be entered where "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "The Court must decide whether a reasonable jury could conclude that the government met its burden of proving each element of the offense beyond a reasonable doubt." United States v. Quinn, 403 F. Supp. 2d 57, 60 (D.D.C. 2005); see Jackson v. Virginia, 443 U.S. 307, 319 (1979). "The verdict in a criminal case is sustained only when there is 'relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt,' that the accused is guilty." American Tobacco Co. v. United States, 328 U.S. 781, 787 n.4 (1946) (quoting Mortensen v. United States, 322 U.S. 369, 374 (1944)).

### B. The interstate nexus was an element the government had to prove for each count.

Each wire fraud count required proof beyond a reasonable doubt that the charged wire communication actually crossed a state line. 18 U.S.C. § 1343; see Sixth Circuit Pattern Criminal Jury Instructions § 10.02 (defining "interstate commerce" to include wire communications "which crossed a state line"). The charged communication "must satisfy the interstate nexus set forth in § 1343; it is an immutable requirement." United States v. Izydore, 167 F.3d 213, 219 (5th Cir. 1999) (reversing wire fraud convictions for insufficient evidence of the interstate nexus). And "[o]ne individual's use of the Internet, standing alone, does not establish an interstate transmission . . . because the origin and host servers, whether one and the same or separate, might be located in the same state as the computer used to access the website." United States v. Kieffer, 681 F.3d 1143, 1155 (10th Cir. 2012).

**C. The government's own account of its proof shows the gap.**

Closing argument is not evidence. But the government's closing describes the proof on which it relied for the interstate element, and on each count that proof consisted of an inference about where the defendant was on a given day, followed by an assertion about where a server was. The government told the jury, count by count, that it had established the fourth element "just like that":

> Count One: an email of April 9, 2020 with a delivery receipt to the defendant's home address in Washington, "and just like that" the government had "established the fourth element of wire fraud." Tr. of Feb. 17, 2026 Morning Session at 35.
>
> Count Two: a receipt for pizza and calzones delivered to the defendant's residence on February 17, 2021, from which the government argued that he "submitted another fraudulent application from his D.C. residence to the PNC server in Virginia thereby obviously establishing the fourth element of wire fraud . . . so just like that." Id. at 40.
>
> Count Three: a CBP report showing that the defendant was outside the United States from March 2021 to April 2022, so that "there was a foreign wire transmission into the PNC server in Virginia, and just like that, we have established the fourth element of wire fraud." Id. at 42.
>
> Count Four: because the defendant was overseas, "there was a foreign wire transmission from outside the United States into the SBA server in Des Moines, Iowa. And just like that, ladies and gentlemen, we have proved beyond a reasonable doubt" the Count Four offense. Id. at 50.
>
> Count Five: "he was overseas when he submitted this application as well, so foreign wire transmission established. And just like that, the government has proved beyond a reasonable doubt that he has committed the offense of wire fraud in count 5." Id. at 51.
>
> Count Six: an email receipt from a barber shop in the District on January 4, 2023, from which the government argued that the "wire traveled across state lines to either JPMC servers in Delaware or Michigan, and just like that we have satisfied the fourth element of wire fraud." Id. at 54.

The government also offered testimony from witnesses for the SBA, JPMorgan Chase, and PNC, none qualified as an expert, about where those institutions process applications. That testimony described where applications are generally processed. It did not establish that any

charged communication was in fact received or processed at those locations, or how it got there. None of this proves that a charged transmission crossed a state line. A delivery receipt, a food order, or a barber-shop receipt does not establish where the defendant was when an application was submitted, that he submitted it, or the route the transmission took. A travel record does not establish where a transmission was received. And the government could not consistently identify the receiving server. For Count Four, the Court instructed the jury that the receiving server was in Virginia, Tr. of Feb. 17, 2026 Morning Session at 23–25; the government told the jury it was in "Des Moines, Iowa," id. at 50. For Count Six, both the Court's instruction and the government's argument placed the server in "Delaware or Michigan." ECF No. 139 at 4; Tr. of Feb. 17, 2026 Morning Session at 54. A rational juror cannot find beyond a reasonable doubt that a transmission was received in a particular place when the government itself named two different States for the same transmission, or could not say which of two States received it.

By pronouncing the talismanic words "just like that" again and again in closing, the prosecution could not speak patently lacking evidence into existence. Because the evidence was insufficient to establish that any charged wire actually crossed a state line, the defendant is entitled to a judgment of acquittal on all counts.

**III. The Government Did Not Establish Venue in This District.**

Proper venue in criminal proceedings was "a matter of concern to the Nation's founders." United States v. Cabrales, 524 U.S. 1, 6 (1998). Article III, the Sixth Amendment, and Rule 18 guarantee that a defendant will be tried in the district where the crime was committed. U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18. When a defendant is indicted on multiple counts, venue must be proper for each count, United States v. Corona, 34 F.3d 876, 879 (9th Cir. 1994), and the government bears the burden of establishing venue by a

preponderance of the evidence. See United States v. Lam Kwong-Wah, 924 F.2d 298, 301 (D.C. Cir. 1991). Where the statute defining the offense contains no express venue provision, "the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." Cabrales, 524 U.S. at 6–7 (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)); see United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999). A challenge to venue raised by motion for judgment of acquittal is timely. United States v. Sandini, 803 F.2d 123, 127 (3d Cir. 1986).

The essential conduct of wire fraud is the transmission. The gist of the offense is the misuse of the wires. See United States v. Garlick, 240 F.3d 789, 792 (9th Cir. 2001). Although a scheme to defraud is an element, it is using the wires, or causing them to be used, in furtherance of the scheme that constitutes the prohibited conduct. See United States v. Condolon, 600 F.2d 7, 8 (4th Cir. 1979) (gravamen of wire fraud is the misuse of interstate communication facilities to execute a scheme to defraud). Venue therefore lies where the charged transmission originated, passed through, or was received. See United States v. Pace, 314 F.3d 344, 349 (9th Cir. 2002).

**A. Counts Three, Four, and Five.**

The government has acknowledged that the applications charged in these counts were submitted while the defendant was outside the United States, ECF No. 142 at 9, and told the jury the transmissions were received by servers in Virginia and Iowa. Tr. of Feb. 17, 2026 Morning Session at 42, 50–51; see ECF No. 139 at 10. On the government's own account, none of those transmissions originated in, passed through, or was received in the District of Columbia.

**B. Counts One, Two, and Six.**

The government's only purported evidence that these transmissions were sent from the District of Columbia was the untenable inference it drew from an email delivery receipt, a food

delivery order, and a barber-shop receipt. Tr. of Feb. 17, 2026 Morning Session at 35, 40, 54. None of those documents places the defendant in the District at the time any application was submitted, or establishes that he submitted it from here.

**C. Count Seven.**

Count Seven charges that, "[i]n or around March 2021, in the District of Columbia and elsewhere," the defendant committed aggravated identity theft during and in relation to the wire fraud charged in Count Three. ECF No. 24 ¶¶ 42–43. But the Superseding Indictment charges that the Count Three transmission was sent from Benin on or about March 25, 2021, id. ¶ 41, and the CBP records the government introduced placed the defendant outside the United States from March 2021 until April 2022. Tr. of Feb. 17, 2026 Morning Session at 42; see ECF No. 155 at 12. The defendant could not have been both in the District of Columbia and in Benin in March 2021 for two interrelated offenses. The government offered no evidence of any act constituting the Count Seven offense in this District, and its own evidence places the conduct outside it.

**D. The government did not carry its burden.**

The government has not met its burden of establishing by a preponderance of the evidence that any of the charged offenses was "begun, continued, or completed" in the District of Columbia. See 18 U.S.C. § 3237(a). The purported evidence and testimony presented did not establish that any charged communication was sent from, passed through, or was received in this District. Venue therefore does not lie in the District of Columbia.

**IV. The Evidence Was Insufficient to Sustain the Conviction for Aggravated Identity Theft.**

Count Seven required proof beyond a reasonable doubt that the defendant "knowingly transfer[red], possesse[d], or use[d], without lawful authority, a means of identification of

another person," during and in relation to a felony enumerated in the statute. 18 U.S.C. § 1028A(a)(1). The government must prove that the defendant knew the means of identification belonged to another person, Flores-Figueroa v. United States, 556 U.S. 646, 657 (2009), and that the use was "at the crux of what makes the conduct criminal," Dubin v. United States, 599 U.S. 110, 131 (2023).

The government's case on Count Seven rested on an IP-address comparison, the ownership of the receiving bank account, and documents recovered from the defendant's devices. See ECF No. 155 at 11–12. The defendant maintains that this evidence did not establish beyond a reasonable doubt that he used his father's name and signature without lawful authority. Count Seven is also predicated exclusively on Count Three; if the evidence was insufficient on Count Three, it was insufficient on Count Seven.

## CONCLUSION

For these reasons, the defendant respectfully requests that the Court (1) set a schedule for written submissions and oral argument on his pending Rule 29(a) motion; (2) decide the motion under Rule 29(b), on the basis of the evidence at the time decision was reserved, before entering any judgment; (3) enter a judgment of acquittal on Counts One through Seven; and (4) permit the defendant to supplement this motion with the relevant portions of the trial transcript upon receipt.

Respectfully submitted,

____________/s/____________________

Jose Biaou, Defendant, Pro Se
DCDC No. 397360
Central Detention Facility (D.C. Jail)

1901 D Street SE, Washington, D.C. 20003
biaoujose@gmail.com

Dated: ____________, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this ____ day of ____________, 2026, I filed the foregoing Objection and Motion with the Clerk of the Court and served a copy upon counsel for the United States, in paper form, by placing the same in the institutional mailing system at the Central Detention Facility, first-class postage prepaid, addressed to the Clerk of the Court, United States District Court for the District of Columbia, 333 Constitution Avenue NW, Washington, D.C. 20001, and to the United States Attorney's Office for the District of Columbia, 601 D Street NW, Washington, D.C. 20530. A copy was also provided to the United States Probation Office and to standby counsel, Louis J. Manzo.

____________/s/____________________
Jose Biaou, Defendant, Pro Se